David **JENKINS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 87–392.

District of Columbia Court of Appeals.

Argued June 9, 1988.
Decided Oct. 6, 1988.

William T. Morrison, Washington, D.C., appointed by this court, for appellant.

Saul M. Pilchen, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, Michael W. Farrell, Mary Ellen Abrecht, and Mary Incontro, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, FERREN and ROGERS, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant David Jenkins of two counts of first-degree burglary, D.C. Code § 22–1801(a) (1981), one count each of assault with intent to commit rape, D.C. Code § 22–2801 (1981), and to commit sodomy, D.C. Code §§ 22–3502, –3503 (1981), and robbery, D.C. Code § 22–2901 (1981). We affirmed his convictions on direct appeal. *Jenkins v. United States,* 483 A.2d 660 (D.C.1984), *cert. denied,* 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985). Jenkins then wrote to the trial court "in regard to the [§] 23–110 motion of the D.C. Code," *see* D.C. Code § 23–110 (1981) (motion attacking sentence), expressing his inability to afford the costs of bringing such a motion. Judge Scott treated Jenkins' letter as a *pro se* motion for appointment of counsel to assist him in filing a motion under § 23–110. The judge then denied the motion, noting that Jenkins had failed in his letter to state any basis for § 23–110 relief and concluding that appointment of counsel was thus unwarranted. Jenkins, now assisted by counsel appointed by this court, contends the trial court erred in denying his motion. The government replies, in a motion to dismiss for lack of jurisdiction, that the appeal is not ripe because the denial of Jenkins' motion for appointment of counsel does not constitute a final order. *See* D.C. Code § 11–721(a)(1) (1981). The government contends that Jenkins must obtain a final ruling on the merits of a § 23–110 motion before he may appeal an order denying appointment of counsel to assist in that effort. We agree with the government and dismiss the appeal.

I.

Jenkins' claim of right to appointment of counsel is grounded in D.C. Code § 11–2601 (1981), which requires the Joint Committee on Judicial Administration to implement a plan for making appointed counsel available to "any person in the District of Columbia who is financially unable to obtain adequate representation" and is "seeking collateral relief" pursuant to specified provisions of the District of Columbia Code. *Id.* § 11–2601(3).

Jenkins sent the following letter to the trial court:

Dear Sir:

I am writing in regard to the 23–110 motion of the D.C. Code, as amended by Section 210(a) of Public Law 9–358, and the information needed to file this motion.

I, David Jenkins, the Petitioner, hereby certify under penalties of perjury, that I have no funds available whatsoever to file a 23–110 motion or to pay for the cost of a hearing in this case.

I trust the foregoing is satisfactory.

Jenkins and the government agree that the trial court properly understood the letter to request appointment of counsel to prepare a motion under D.C. Code § 23–110 collaterally attacking Jenkins' conviction.

Clearly, Jenkins did not proffer any reason for his request. The trial court accordingly ruled: "In light of the fact that defendant has not provided any basis for a § 23–110 motion, the Court concludes that appointment of counsel is unwarranted." Before discussing whether this order is appealable, it will be helpful to put Jenkins' claimed right to appointment of counsel in context.

### A.

■ In the first place, generally speaking there is no constitutional right to appointment of counsel to develop and pursue post-conviction relief. *Pennsylvania v. Finley*, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Nor is there commonly a statutory basis entitling a criminal defendant whose conviction has been affirmed on direct appeal to have counsel appointed to pursue collateral relief. *See Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969). In holding that, absent a reasonable alternative, a state may not absolutely bar inmates from furnishing assistance to one another in preparing petitions for a writ of habeas corpus, the Supreme Court noted in *Johnson:*

It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief. *See, e.g., Barker v. Ohio*, 330 F.2d 594 (C.A. 6th Cir.1964). Accordingly, the initial burden of presenting a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system. In the case of all

except those who are able to help themselves—usually a few old hands or exceptionally gifted prisoners—the prisoner is, in effect, denied access to the courts unless such help is available.

*Id.*

The federal courts have recognized, on the other hand, that once a prisoner files a petition for a writ of habeas corpus, "the circumstances of a particular case [may] indicate that appointed counsel is necessary to prevent due process violations"; and, in any event, pursuant to federal statute, "[t]he District Court has discretion to appoint counsel for indigents when it determines 'that the interests of justice so require.' 18 U.S.C. § 3006(A)(g)." *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir.1986), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1911, 95 L.Ed.2d 516 (1987); *accord, Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

Under D.C. Code § 11–2601(3)(A), which is our local analogue of 18 U.S.C. § 3006A(g), the District of Columbia—without specifying criteria for doing so—purports to provide legal counsel for indigents "seeking collateral relief" pursuant to § 23–110. The question, then, is whether every indigent prisoner is entitled to a court-appointed lawyer to explore the possibility of collateral relief, or instead, as in the federal system, the statutory right is limited to appointment of counsel after some threshold test is met, such as the federal "interests of justice" standard. 18 U.S.C. § 3006A(g).

■ Unhesitatingly, we conclude that § 11–2601(3)(A) is not standardless. D.C. Code § 11–2602 specifically distinguishes between (1) "cases where a person faces a loss of liberty and the Constitution or any other law requires the appointment of counsel," in which "the court shall advise the defendant or respondent that he has the *right to be represented by counsel,*" and (2) "cases covered by the Act where the appointment of counsel is discretionary," in which "the defendant or respondent shall be advised that counsel *may be appointed to represent him.*" D.C. Code § 11–2602 (1981) (emphasis added). Since

neither the Constitution nor any other law requires appointment of counsel for purposes of pursuing § 23–110 relief, D.C. Code § 11–2602 makes clear that any appointment of counsel for that purpose is entrusted to the sound discretion of the trial court. Absent a constitutional right to counsel under particular circumstances, Congress did not intend automatic assignment of counsel to any prisoner in the District of Columbia who simply wishes to explore collateral relief.[1] Indeed, had Congress so intended, it is likely that Congress would have adopted such a scheme for federal prisoners, which of course it did not. Accordingly, for want of any more enlightened formulation, and in recognition of the appropriate and workable standard specified under federal law, we construe § 11–2601(3)(A) to incorporate, implicitly, an "interests of justice" standard for trial court scrutiny of a prisoner's request for legal assistance.[2]

### B.

To help define the "interests of justice" standard as applied to requests for counsel under § 11–2601(3)(A), we look initially at the relationship between a request for appointment of counsel and the criteria for trial court consideration of the § 23–110 motion itself—criteria well developed in our caselaw. D.C.Code § 23–110(c) (1981) provides in part:

> Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto.

We have held that this provision does not entitle a prisoner to a hearing if the motion (1) is " 'palpably incredible' (though not merely 'improbable')," or (2) "fails to state a claim," *i.e.*, the assertions, even if true, would not entitle the prisoner to relief under § 23–110, or (3) is " 'vague and conclusory,' " *i.e.*, the "prisoner does not present a factual foundation in some detail." *Pettaway v. United States*, 390 A.2d 981, 984 (D.C.1978); *accord, Gregg v. United States*, 395 A.2d 36, 39 (D.C.1978). It will be the unusual case, we believe, when a prisoner will be entitled to appointment of counsel but the § 23–110 motion fails under the *Pettaway* criteria to merit a hearing. It will be rare, in other words, for the "interests of justice" to require appointment of counsel when the claim is not colorable enough to be heard in open court. The converse is also likely to be true: if the prisoner's § 23–110 claim is sufficient for a hearing, it presumably will be colorable enough to warrant appointment of counsel under § 11–2601(3)(A). We normally do not require a prisoner to conduct his or her own hearing under such circumstances.

In sum, we do not say that the criteria for entitlement to a hearing and to appointment of counsel will always, as a matter of law, produce the same positive or negative result but, we do believe that usually the

---

1. Neither the legislative history of the Criminal Justice Act nor the plan implemented pursuant to that Act offers any illumination on this point. The legislative history notes merely that:

   Representation must be provided to indigents in all felony or misdemeanor cases where the United States Attorney prosecutes or would prosecute were the defendant not a juvenile, and in all cases of indigent persons under arrest where representation is required by law. Representation must also be provided for persons charged with violation of parole or probation, or in custody as a material witness cases or seeking collateral relief.

   H.Rep. No. 1172, 93d Cong., 2d Sess. 6 (1974). The report thus simply repeats the language of the statute itself, and offers no comment on how the statute is to be construed. The District of Columbia Criminal Justice Act Plan also does not address the circumstances when appointment of counsel is appropriate to assist a prisoner in seeking collateral relief.

2. Although we do not formally decide the question here, we perceive no obvious reason why the "interests of justice" standard should not also apply to requests for counsel under subsections (B) through (D) of D.C.Code § 11–2601(3) (1981). *See* D.C.Code § 11–2601(3)(B) (collateral attack under Chapter 7, title 23, regarding extradition and fugitives from justice), (C) (collateral attack under Chapter 19, title 16, regarding habeas corpus relief), and (D) (collateral attack under D.C.Code § 24–302 regarding the commitment of mentally ill persons while serving sentence).

"interests of justice" will be served when appointments of counsel under § 11–2601(3)(A) are limited to—but assured for—assistance of prisoners entitled to hearings pursuant to § 23–110(c) based on grounds they have proffered by *pro se* motion. This court's experience in reviewing appeals of orders denying § 23–110 motions without a hearing informs and confirms our judgment here.

It follows that, for the trial court to apply the "interests of justice" test properly, the prisoner must proffer the grounds for collateral relief at the time counsel is requested. The trial court should not have the initial responsibility to peruse the record, including the transcript, to determine whether the prisoner has a colorable basis for a § 23–110 attack. Indeed, there is every reason to believe that this first formulation of such a claim should be the prisoner's own responsibility, Presumably, the prisoner has already had legal representation for the direct appeal; and presumably the conviction, if affirmed on appeal, was obtained through due process. Furthermore, over the years we have encouraged appellate counsel to pursue collateral attacks under § 23–110 alleging ineffective assistance of trial counsel, if indicated, before the direct appeal is resolved, with a view to consolidating this court's review of the direct appeal and of the collateral attack in one proceeding. *See, e.g., Proctor v. United States,* 381 A.2d 249, 252 & n. 4 (D.C. 1977).[3] Accordingly, the prisoner presumptively will have had considerable legal assistance, including help in scrutinizing the record for possible collateral relief, by the time the direct appeal has been concluded. Moreover, our own experiences confirm the Supreme Court's observations in *Johnson* about the resourcefulness, of prisoners in developing their own grounds for collateral relief. In this con-

text, therefore, we believe the requirement of a § 23–110 proffer at the time counsel is requested is fair. The proffer may not be enough to warrant appointment of counsel, let alone a hearing or other relief. But, a proffer is indispensible. In sum, we, conclude that the required proffer of the grounds for a § 23–110 motion, before appointment of counsel can be justified under § 11–2601(3)(A), is consistent with the "interests of justice."

There is one further detail. As a practical matter, when the trial court reviews the prisoner's letter or motion requesting appointment of counsel on the basis of proffered grounds, the court will have received, in effect, the § 23–110 motion itself. The court, therefore, should docket the submission as such (subject, of course, to amendment in the event counsel is appointed and wishes to refine the approach taken). *Cf. Garcia v. United States,* 542 A.2d 1237 (D.C.1988) (trial court should treat letters at issue as timely filed motions to reduce sentence).

### C.

With this background, we turn to the question whether denial of a request for appointment of counsel to develop and file a motion under § 23–110 is appealable before entry of the final order disposing of the § 23–110 motion itself.

■ A letter or motion requesting appointment of counsel without proffering grounds for collateral relief is inherently defective in light of the foregoing analysis. Arguably, therefore, it need not be docketed, for it fails to comply with the pleading requirements we have adopted here. On that theory, the trial court's response to an undocketed communication could not be characterized as an order of any kind, let alone an appealable order. On the other

---

**3.** Recently, in *Shepard v. United States,* 533 A.2d 1278 (D.C.1987), we held that a prisoner will waive a claim of constitutional ineffectiveness of trial counsel if that ineffectiveness was demonstrably known or knowable at the time of the direct appeal but was not joined in the review proceeding. We have not had occasion to consider *Shepard* in connection with a case in which trial counsel continues as appellate

counsel, so that he or she would be in the position of having to review his or her own possible ineffectiveness. This, of course, is likely to put counsel—and client—in an untenable position. *See Angarano v. United States,* 312 A.2d 295 (D.C.1973), *reh'g en banc denied,* 329 A.2d 453, 457–58 (D.C.1974). We do not confront that problem here.

hand, given our conclusion that, absent some constitutional basis, a prisoner *never* has a right to appointed counsel under § 11–2601(3)(A) without proffering grounds for collateral attack, it is probably more sensible to take another approach: all such communications should be docketed, but, in every case, the request for counsel should be deemed sufficiently reflective of a request for § 23–110 relief as well—even if none is articulated at the time—that the question of appealability of a denial of counsel is not presented in isolation. Rather, because the request for counsel and the § 23–110 motion are part of the same package, the question in every case is not whether the denial of the request for counsel is appealable as a final order in its own right but whether it is appealable as a collateral order before entry of a final order on the § 23–110 motion itself. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

For appealability under the collateral order doctrine first announced in *Cohen*, "the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457 (footnote and citations omitted). In at least one case involving a prisoner's collateral attack on conviction, a federal court of appeals has held that "[a]n interlocutory order denying appointment of counsel in a habeas corpus proceeding does not fall within the 'narrow exception' established by *Cohen*," *Weygandt v. Look,* 718

F.2d 952, 953 (9th Cir.1983), and thus is not appealable.

Applying the first *Coopers & Lybrand* criterion, the Ninth Circuit panel observed in *Weygandt* that "an interlocutory order denying appointment of counsel in a habeas proceeding is ... 'inherently tentative' " because "the district court or magistrate may appoint counsel at any stage of the case if the interests of justice require." 718 F.2d at 954. Consequently, reasoned the circuit court, any denial of counsel does not necessarily "conclusively determine the disputed question." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457.

Additionally, the court noted, with respect to the second *Coopers & Lybrand* criterion, that resolution of the asserted right to counsel is "inextricably enmeshed" with resolution of the claim for collateral relief. *Weygandt,* 718 F.2d at 954. "In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his [or her] claims *pro se* in light of the complexity of the legal issues involved." *Id.* (citations omitted).[4] The court concluded that adequate relief would be available to the petitioner on appeal from the final order on his habeas petition. *Id.* Other federal courts, not having to address the collateral order doctrine, have demonstrated the fairness and practicability of the *Weygandt* approach. They commonly have ruled on denials of requests for appointment of counsel in habeas corpus proceedings as part of the appellate review of final orders denying (or sometimes granting) such collateral relief on the merits. *See, e.g., Chaney, supra; Wilson v. Duckworth,* 716 F.2d 415 (7th Cir.1983); *Schultz, supra.*[5]

4. Criteria for exercising trial court discretion in applying the "interests of justice" test under 18 U.S.C. § 3006A(g)—and for reviewing the exercise of trial court discretion for abuse—have been held to include:

(1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) capability of the indi-

gent to present the case; and (5) complexity of the legal issues raised by the complaint. *Wilson v. Duckworth,* 716 F.2d 415, 418 (7th Cir.1983) (citation omitted). We are skeptical about arguments that the "interests of justice" will not necessarily require appointment of counsel if, for example, the indigent prisoner has "ability ... to investigate crucial facts" or the "capability ... to present the case."

5. The Supreme Court has held the collateral order doctrine inapplicable in conceptually sim-

■ We agree with the *Weygandt* court that denial of a request for counsel in connection with pursuit of a collateral attack on a conviction—in this case under § 23–110—is not appealable under the collateral order doctrine and that complete, effective relief will be available when the appellate court reviews the trial court's ruling on the merits of the § 23–110 motion.[6] We are satisfied, more specifically, that in the event this court were to conclude, upon review of a final order denying § 23–110 relief, that the trial court abused its discretion in declining to appoint counsel under "the interests of justice" standard, the case would have to be reversed and remanded for proceedings with appointed counsel; we would not be able to conclude that a proceeding in which a prisoner was entitled to a lawyer, but did not have one, could nonetheless be reviewed on the merits for harmless error. *See Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("The right to have assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of

prejudice arising from its denial."); *accord, Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (denial of request for separate counsel); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (absence of counsel at arraignment at which defendant pled guilty to capital offense); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (same). Accordingly, although the appointment-of-counsel issue cannot be effectively reviewed apart from the merits of the § 23–110 motion, we believe that, once the need for counsel becomes evident, the case must be reversed and remanded without more; the absence of counsel cannot be harmless error.

Our approach, outlined earlier, that generally equates the right to appointment of counsel under § 11–2601(3)(A) with the right to a hearing under § 23–110(c) will tend to solve any problem with deferring appealability of the former until resolution of the latter. The instant case is rare indeed; in most cases to date—and, presumably, in those to be filed after this

ilar situations. For example, in *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the Court held that "pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable under 28 U.S.C. § 1291." *Id.,* 465 U.S. at 260, 104 S.Ct. at 1052. The Court reasoned that, if disqualification of counsel requires no showing of prejudice to the defense to warrant reversal, then the disqualification is effectively reviewable on appeal of the prosecution itself, since the merits of the prosecution would not be implicated. If, on the other hand, prejudice to the defense must be shown before disqualification of counsel can amount to reversible error, then the disqualification issue is not completely separate from the merits of the prosecution. Under either hypothesis, therefore, the *Coopers & Lybrand* criteria under the collateral order exception to the final judgment rule would be met. *See also Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (pretrial orders disqualifying counsel in civil cases not appealable under 28 U.S.C. § 1291); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (pretrial orders denying motions to disqualify counsel in civil cases not appealable under 28 U.S.C. § 1291).

In *Urciolo v. Urciolo,* 449 A.2d 287 (1982), this court held appealable under the collateral order doctrine a trial court order that in practical

effect disqualified counsel in a civil case. We distinguished *Firestone Tire & Rubber Co.* (as denying a motion to disqualify counsel) and relied on the many federal circuit court of appeals cases that, as it turned out, were effectively overruled in *Richardson–Merrell, Inc.* Under the circumstances, we do not believe *Urciolo* provides support for appellant's position.

6. Appellant relies for appealability on *Roberts v. United States District Court,* 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950). The Supreme Court's ruling that the denial "of a motion to proceed *in forma pauperis* is an appealable order," *id.* at 845, 70 S.Ct. at 955, under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), does not help appellant, however, for, unlike appellant's request for appointment of counsel to pursue a § 23–110 motion, the law presumes that a prisoner's right to proceed *in forma pauperis* must be finally resolved before the related claims can even be filed. While we accept the proposition that an indigent prisoner, without counsel, will be able to file a motion collaterally attacking a conviction, we note that *in forma pauperis* statutes are premised on the notion that an indigent prisoner will never be able to muster the necessary court costs, and thus will not be able to file a claim at all, if the motion to proceed *in forma pauperis* is improperly denied. The two situations, therefore, are distinguishable.

opinion is issued—the trial court will have initially ruled on the motions for appointment of counsel and for § 23–110 relief simultaneously, either denying both without a hearing or granting the requests for counsel and for a hearing. In the former situation, the jurisdictional issue presented by this case—the separate appealability of the denial of counsel before resolution of the § 23–110 motion on the merits—will not be raised. And in the latter situation, of course, there will be no appealability issue. Our approach also will foster judicial economy, minimizing if not eliminating the possibility of reversing, for lack of counsel, a trial court order denying a § 23–110 motion after a time-consuming hearing.

## II.

From the foregoing it should be clear that Jenkins' appeal of Judge Scott's order denying appointment of counsel for purposes of § 23–110 relief must be dismissed for lack of jurisdiction (without prejudice to similar appeals following denial of later § 23–110 motions, if filed). It was not a final order because it was "inextricably enmeshed" with resolution of any § 23–110 claim for relief. *Weygandt,* 718 F.2d at 954; *see Cooper & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457. And, as elaborated above, the collateral order doctrine does not save the appeal.

APPEAL DISMISSED.

ROGERS, Associate Judge, concurring:

I join Judge Ferren's opinion to the extent it concludes that the denial of a request for counsel to develop and file a collateral attack under D.C.Code § 23–110 (1981) is not appealable under the collateral order doctrine. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *Weygandt v. Look,* 718 F.2d 952, 953 (9th Cir.1983).

MACK, Associate Judge, dissenting:

I would not dismiss. I would treat the trial court's ruling as denying a collateral motion on the merits, and I would affirm that ruling.